# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| JOSPEH J. YEAGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:17-cv-04093-NKL |
| | ) |
| ANNE L. PRECYTHE, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Plaintiff Joseph J. Yeager, who is serving a Missouri prison sentence of life plus 13 years, alleges that the procedures used by the Defendant State of Missouri officials[1] in denying his parole requests violate the United States and Missouri Constitutions. He seeks declaratory and injunctive relief. The Defendants move to dismiss. Doc. 14. The motion is granted.

## I.   Background[2]

In 1993, Yeager was convicted of second-degree murder and armed criminal action, and given consecutive sentences of life imprisonment plus 13 years. He was denied parole in 2006, 2011, and 2016. Yeager alleges that he is a model inmate who has made tremendous strides to improve himself and to prepare to rejoin society during his 24 years of imprisonment.

When Yeager was denied parole in 2006, the written reason provided to him stated:

---

[1] The Defendants are Anne Precythe, Director of the Missouri Department of Corrections; Kenneth Jones, Chairman of the Missouri Board of Probation and Parole; Jennifer Zamkus, Vice Chairman of the Missouri Board of Probation and Parole; and Jim Wells, Martin Rucker, Ellis McSwain, Jr., Don Ruzicka, and Gary Dusenberg, who are Parole Board members. The Defendants are sued in their official capacities.

[2] For purposes of deciding the motion to dismiss, the Court accepts the factual allegations in the Complaint as true and construes them in the light most favorable to the plaintiff. *See Stodghill v. Wellston Sch. Dist.,* 512 F.3 472, 476 (8th Cir. 2008).

> Release at this time would depreciate the seriousness of the present offense based upon the following:
>
> A. Circumstances Surrounding Present Offense.

Doc. 1, p. 10; and Doc. 1-6. At the 2006 parole hearing, then-Board member Fannie Gaw, who is not a Defendant to this lawsuit, remarked that Yeager's crime was "first degree murder" and he "should be down at Potosi," and recommended his next parole hearing be in 10 years, as requested by a victim's family member. Doc. 1, p. 14. After receiving a complaint from Yeager's mother, Dana Thompson, then Chair of the Board, wrote Yeager's mother a letter, acknowledging that Gaw's statement was inappropriate and that the Board did not have a formal system for auditing the content of the approximately 1,000 parole hearings that it held monthly. Doc. 1-10. However, Thompson said, the outcome of the parole hearing was not affected because a majority of the Board members had decided to set the next hearing in five years, or 2011. He also said that Gaw's term had expired after Yeager's 2006 hearing.

When Yeager was denied parole in 2011 and 2016, the written reasons provided to him both times stated:

> Release at this time would depreciate the seriousness of the present offense based upon:
>
> A. Circumstances surrounding the present offense,
> B. Use of a weapon,
> C. Use of excessive force or violence,
> D. Community Opposition.

Doc. 1, p. 10; Doc. 10-7; and Doc. 10-8. Yeager alleges that the Board "arbitrarily" added reasons B, C, and D, which are "clearly related to the category of 'seriousness of the present offense,'" and is overly focused on static factors of the offense. *Id.* Further, Yeager alleges, the Board in 2011 and 2016 improperly applied the law and regulations as modified after the date of his offense.

Yeager also generally complains that he was not given access to the evidence against him before any of his hearings; the Board is not adequately explaining the bases for its denials or the reason why it scheduled his parole hearings the maximum amount of time apart; and he was not permitted to appeal from any of the three denials of parole.

He further alleges that the "high level of secrecy and lack of oversight the Board enjoys has created a dysfunctional and disrespectful atmosphere." Doc. 1, p. 16. "For example," Defendant Ruzicka, a Board member who "contributed to the Parole Board's decision to deny" Yeager parole on June 2, 2016, was investigated by the Missouri Department of Corrections, Office of Inspector General for playing games during parole hearings. Ruzicka and a parole analyst would compete against each other to see how many times each could use a particular word or refer to a song lyric during a proceeding, and on occasion dressed identically. *Id.* Yeager alleges upon information and belief that "the entire Parole Board and much of its staff were aware of these practices and condoned them," and Ruzicka continues to sit on the Board and conduct hearings. *Id.,* p. 17. The investigation report attached to the complaint refers to "Incident Date[s]" after the date of Yeager's 2016 hearing: 6/21/21/2016, 6/22/2016, 6/23/2016, 7/18/2016, and 7/20/216. Doc. 1-11, p. 1.

Further, victim impact evidence was permitted at all three of Yeager's parole hearings. Yeager alleges that victims' representatives were permitted to provide "inflammatory" and "inaccurate" statements about him and the crime. Doc. 1, pp. 13-14. Yeager and his mother were permitted to speak only for a short amount of time and Board members asked them very few questions. In contrast, Board members encouraged the victim's representatives to share information.

In Counts I and IV of the Complaint, Yeager alleges that that his right to due process of

law under the United States and Missouri Constitutions was violated because, even if he does not have a liberty interest in parole hearings, the hearings are the functional equivalent of sentencing, and due process protections apply at sentencing. Doc. 1, pp. 18–19, 21–22. He alleges that the Defendants' actions in denying him parole were erroneous and arbitrary, including the changing bases for denial, refusal to permit him to review and rebut evidence presented against him, and denying him notice of and explanation for the parole determination while citing seriousness of the offense. Yeager further states that he is making "'a nonfrivolous argument for extending, modifying, or reversing existing law, or establishing new law. FED. R. CIV. P. 11(b)(2).'" *Id.*, p. 18, n. 5, and p. 21, n.7.

In Counts II and V, Yeager alleges that his parole denials violate his right to be free from ex post facto laws under the United States and Missouri Constitutions. *Id.* at 19–20, 22–23. He alleges that the Board implemented new parole regulations and imposed new procedures with retroactive effect, and applied them to his 2016 parole denial, rather than applying the regulations and procedures that were in effect at the time of his offense. He further alleges that "it appears the Board is holding" him "to the 85% rule," which went into effect only after the date of his underlying offenses. *Id.,* p. 19. Yeager alleges that as a result, there is a real risk of increasing the measure of punishment for his offenses, from the dates of the offenses, and that he has in fact already served more than the 15-year, deterrent and retributive portion of his sentence as defined in parole regulations. *Id.*, p. 20.

Finally, in Counts III and VI, Yeager alleges that his parole denials amount to cruel and unusual punishment under the United States and Missouri Constitutions, because of the broad and inflammatory nature of the victim impact evidence permitted at his parole hearings. *Id.*, pp. 20–21, and 23–24. He alleges that because there are limitations on victim impact evidence

that may be presented at a criminal sentencing, and a parole hearing is like a sentencing, such evidence should not be permitted at a parole hearing. *Id.* Yeager further states that he is making "'a nonfrivolous argument for extending, modifying, or reversing existing law, or establishing new law. FED. R. CIV. P. 11(b)(2).'" *Id.*, p. 21, n. 8, and p. 24, n.10.

Yeager requests declaratory and injunctive relief.

## II. Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" when the allegations allow the court to draw the reasonable inference that the defendants are liable for the misconduct alleged, which is more than "a sheer possibility" that the defendants acted unlawfully. *Id.* (citation omitted). A plaintiff merely alleging facts that are "consistent with" liability is insufficient. *Id.* (citation omitted).

In considering whether a complaint meets the plausibility standard, a court must accept all factual allegations as true, but "is not bound to accept as true a legal conclusion couched as a factual allegation." *Carton v. General Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010) (*citing McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009)). Speculative, conclusory, or nonspecific allegations are insufficient. *Cooper v. Schriro*, 189 F.3d 781, 784–85 (8th Cir. 1999).

To succeed on his § 1983 claims, Yeager must prove: (1) that Defendants deprived him of a right secured by the United States Constitution or laws, and (2) that Defendants acted under color of state law. *Gonzales-Perez v. Harper*, 241 F.3d 633, 637 (8th Cir. 2001). Analysis of Yeager's claims under the Missouri Constitution is the same as under the United States

Constitution, because Missouri interprets its corresponding constitutional provisions similarly. *See Jamison v. State Dept. of Social Services, Div. of Family Services,* 218 S.W.3d 399, 405 n.7 (Mo. 2007) ("Missouri's due process clause parallels its federal counterpart"); *State v. Harris*, 414 S.W.3d 447, 449 (Mo. 2013) (Missouri's ban on ex post facto laws is "coextensive" with the federal ban and the Missouri Supreme Court analyzes it "in lockstep" with the federal ban); and *Burnett v. State,* 311 S.W.3d 810, 814 n.3 (Mo. App. 2009) (Missouri courts "apply the "same standard in determining whether a punishment violates the United States Constitution or Missouri Constitution" because both provide the "same protection" against cruel and unusual punishment).

### A. The due process claims, Counts I and IV, fail as a matter of law.

"There is no constitutional or inherent right of a convicted person to be conditionally released before expiration of a valid sentence." *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7 (1979). This is because the conviction has extinguished any liberty interest in release until the sentence has been served. *Id.; McKown v. Mitchell,* 869 S.W.2d 765, 768 (Mo. App. 1993). Yeager's due process claims therefore fail because his sentence will not expire before the end of his natural life in prison, plus 13 years.

To the extent Yeager suggests Missouri's system for parole review creates due process protections, that argument also fails. State statutes and regulations governing parole can create a constitutionally protected liberty interest in parole, if they specifically mandate that parole must be granted when certain criteria are met. *Maggard v. Wyrick,* 800 F.2d 195, 198 (8th Cir. 1986); *McKown,* 869 S.W.2d at 767–69; *Watley v. Missouri Bd. of Probation and Parole,* 863 S.W.2d 337, 339 (Mo. App. 1992). Where the relevant statutes and regulations do not create mandatory criteria for parole but instead leave the question of parole to the discretion of the parole board,

the prisoner has no liberty interest in parole even when or simply because non-mandatory guidelines have been met. *See McKown,* 869 S.W.2d at 769 (fact that guidelines set service of 25% of sentence as factor in deciding when parole would be granted did not create liberty interest in parole once 25% of sentence had been served). Missouri's regulations do not create mandatory criteria for parole.

The governing statute, Mo. Rev. Stat. § 217.690.1, states in relevant part:

> When <u>in its opinion</u> there is reasonable probability that an offender of a correctional facility can be released without detriment to the community or to himself, the board may <u>in its discretion</u> release or parole such person except as otherwise prohibited by law. All paroles shall issue upon order of the board, duly adopted. [Emphasis added.][3]

Examining § 217.690.1 in *Fults v. Missouri Bd. of Probation and Parole,* 857 S.W.2d 388 (Mo. App. 1993), the Missouri Court of Appeals held that the statute places the parole decision in the wide discretion of the Board. The court further observed that the parole regulations adopted pursuant to the statute similarly indicate in multiple places that they are intended to provide guidelines as to the customary range of time to be served, but that they do not remove the Board's discretion to consider individual factors in each case, and thus create no constitutional right to a particular parole date. *Id.* at 391–92. *See also State ex rel. Cavallaro v. Groose*, 908 S.W.3d 133, 134–36 (Mo. 1995) (substantive due process does not apply to procedures created by state statutes such as Missouri parole statutes, and the statutes create no liberty interest in release, defeating a procedural due process claim); *Gettings v. Mo. Dep't of Corrections*, 950 S.W.2d 7 (Mo. App. 2007) (Missouri parole regulations and guidelines are merely advisory, do not limit the Board's discretion, and create no liberty interest); *Marshall v. Mitchell*, 57 F.3d

---

[3] This language has appeared in § 217.690.1 since at least the time of Yeager's crimes. *See* 1990 Mo. Legis. Serv. H.B. 974, and 1992 Mo. Legis. Serv. S.B. 638.

7

671, 672–73 (8th Cir. 1995) (upholding dismissal of due process challenge to Missouri parole denial as frivolous because Missouri parole statutes and regulations do not create a liberty interest in parole); *Wolford v. McSwain*, 2017 WL 994455 at *3 (E.D. Mo. 2017) ("It is therefore self- evident that, because Missouri prisoners have no federally protected liberty interest in parole, they cannot mount a federal constitutional challenge to any state parole review procedure on procedural or substantive due process grounds").

Yeager also points to a booklet adopted by the Board, titled "Procedures Governing the Granting of Release of Paroles and Conditional Releases," dated April 2009, and attached to his Complaint. Doc. 1-9. Similar to the Missouri parole statute and regulations, the guidelines are framed in terms of discretion, *e.g.*:

> To establish a uniform parole policy, promote consistent exercise of discretion and equitable decision-making, without removing individual case consideration, the Board has adopted guidelines for parole release consideration, using the salient factor scale and time to be served matrices….
>
> These guidelines indicate the customary range of time to be served before release for various combinations of offender characteristics and sentence length. Mitigating or aggravating circumstances may warrant decisions outside the guidelines. The Board reserves the right to consider total offense behavior as an aggravating factor in decision reached above the guidelines. …
>
> The guidelines are only a tool to assist the Board in meeting the goals previously stated. Nothing in guideline policy can be read to mandate release.

*Id.* at p. 6 (para. 11, "Parole Guidelines"). The guidelines, including the salient factors scale, therefore establish no liberty interest in parole. *See Gettings v. Mo. Dep't of Corrections,* 950 S.W.2d 7, 10 (Mo. App. 1997) (rejecting prisoner's liberty interest and due process arguments concerning the Parole Board's guidelines, including salient factors score; the guidelines are discretionary).

8

Yeager also argues that the Board's "arbitrary and changing bases for denial" of parole, denial of the right to review and rebut evidence presented against him at the hearings, and denial of notice and explanation of the bases for the decisions "while continually denying parole based on the seriousness of the offense," violate basic due process standards. Doc. 17, p. 12-13. He also alleges that one panel member in 2006 inaccurately and inappropriately described his crimes; a Defendant panel member played games during parole hearings, and that he (Yeager) was not permitted to appeal from the denials of parole. These arguments do not change the analysis because due process protection is only invoked when state procedures which may produce erroneous or unreliable results imperil a protected liberty or property interest. *See Olim v. Wakinekona,* 461 U.S. 238, 250-51 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate entitlement."); *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) ("[T]he Due Process Clause does not federalize state-law procedural requirements."). As discussed above, Yeager has no protected liberty interest in parole. *See also Marshall,* 57 F.3d at 672 (rejecting due process claim where one member of three-member Missouri Parole Board panel walked out of the parole hearing; prisoner had no liberty interest in parole decisions); *Maggard,* 800 F.2d at 198 (there is no due process violation in disallowing an inmate's review of a parole file under the terms of Mo. Rev. Stat. § 217.690); *Wolford v. McSwain,* 2017 WL 994455, at *3 (E.D. Mo. March 15, 2017) (rejecting due process claim based on lack of access to adverse information in parole file; no liberty interest in parole); *Gettings*, 950 S.W.3d at 10 (rejecting due process challenge to Board's refusal to release prisoner due to seriousness of offense, notwithstanding the prisoner's "perfect" salient factor score; the guidelines were not mandatory); and *Wheat v. Mo. Bd. of Probation and Parole,* 932 S.W.2d 835, 839 (Mo. App. 1996) (no liberty interest in release on parole after

completion of sex offender treatment program, notwithstanding that the regulations indicate a prisoner will "typically" be released after completion of the program).

Further, the U.S. Supreme Court decision that Yeager cites, in which it recognized due process rights in parole, *Morrissey v. Brewer,* 408 U.S. 471, 482-85 (1972), concerns parole revocation and does not change the analysis. Doc. 17, pp. 15-16. The Supreme Court decided *Greenholtz* later the same year it decided *Morrissey,* and explained in *Greenholtz* that "[t]he differences between an initial grant of parole and the revocation of the conditional liberty of the parolee are well recognized." 442 U.S. at 10. The Supreme Court in *Greenholtz* went on to hold that where a state "holds out the *possibility* of parole," it is providing "no more than mere hope that the benefit will be obtained." *Id.* Such mere hope, such as that held out by Yeager, is not protected by due process. *Id.*

Yeager also cites *Thompson v. Armontrout*, 647 F. Supp. 1093, 1095 (W.D. Mo.), *aff'd,* 808 F.2d 28 (8th Cir. 1986), in which the District Court granted a petition for writ of habeas corpus, after finding that a prisoner's due process rights were violated by the Parole Board's retaliatory or vindictive denial of parole for challenging his state court conviction. *Thompson* is distinguishable, in that it was based on *North Carolina v. Pearce,* 395 U.S. 711, 726 (1969). In *Pearce*, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment prevents an increased sentence after a criminal defendant has successfully challenged a conviction and has been reconvicted when the increased sentence is motivated by vindictiveness on the part of the sentencing judge. The court in *Thompson* extended *Pearce* to the actions of the Parole Board. *Pearce*, decided before *Greenholtz* and the other due process cases discussed above, has never been extended to allegations of the kind Yeager makes here.

Finally, with respect to the due process claims, Yeager candidly states in his Complaint

that he seeks to extend, modify, or reverse existing law or establish new law. This Court, however, is bound to follow the existing, applicable law as discussed above.

In view of the foregoing, Counts I and IV fail as a matter of law.

**B.     The ex post facto claims, Counts II and V, fail as a matter of law.**

Yeager alleges that the Board implemented new regulations and imposed new procedures with retroactive effect in denying him parole in 2016. He further alleges that the Board appears to be applying the 85% rule concerning the amount of time that must be served before parole eligibility, enacted by the Missouri legislature in 1994 in response to federal truth in sentencing principles. Doc. 17, pp. 4-5. The claims fail.

The Ex Post Facto Clause of the United of the United States Constitution prohibits laws which retroactively alter the definition of crimes or increase the punishment for criminal acts. A retroactive change in state law is a violation of ex post facto only if the law creates a "sufficient risk of increasing the measure of punishment attached to the covered crimes." *California Dep't of Corr. v. Morales,* 514 U.S. 499, 507 (1995).

That release would depreciate the seriousness of the underlying offense has been a reason for denying parole throughout the history of the current Missouri parole statute, § 217.690, which was enacted in 1982, and was a reason under its predecessor, Mo. Rev. Stat. § 549.261 (1959). Likewise, the Missouri regulation in effect as of the date of Yeager's underlying offense provided the following list of reasons why parole may be denied:

1.     Release at this time would depreciate the seriousness of the offense committed or promote disrespect for the law;
2.     There does not appear to be a reasonable probability at this time that the inmate would live and remain at liberty without violating the law;
3.     The inmate has not substantially observed the rules of the institution in which confined; or
4.     Release at this time is not in the best interest of society.

14 C.S.R. 80-2.010(9)(A) (1992). The 2016 version of 14 C.S.R. 80-2.010 does not include any factors concerning denial of parole. The Parole Board's guidelines in effect at the time of the 2016 hearing, however, list seriousness of the offense as a reason for denial, and include six factors for considering seriousness:

> A. Release at this time would depreciate the seriousness of the offense committed or promote disrespect for the law.
>
> 1) Circumstances surrounding the offense(s).
> 2) Relatively high degree of sophistication show in crime.
> 3) Weapons or excessive force/violence involved.
> 4) Community opposition.
> 5) Multiple or consecutive sentences.
> 6) Other.
>
> ***

Doc. 1, p. 9.

In 2006, the Board stated that Yeager's request for parole was denied because "[r]elease at this time would depreciate the seriousness of the present offense based upon the following: A. Circumstances Surrounding Present Offense." When he was denied parole in 2011 and 2016, the Board stated, "Release at this time would depreciate the seriousness of the present offense based upon: A. Circumstances surrounding the present offense, B. Use of a weapon, C. Use of excessive force or violence, D. Community Opposition."

Yeager was sentenced to life imprisonment plus 13 years for second-degree murder and armed criminal action in 1993. The seriousness of the offense of murder justifies denial of parole. *See Cavallaro*, 133 S.W.3d at 134–37 (rejecting ex post facto challenge to parole denial where the determination that release at this time would depreciate the seriousness of the offense, a 1968 double murder, was the reason for parole denial); *Maggard v. Wyrick*, 800 F.2d 195, 196–98 (8th Cir. 1996) (rejecting ex post facto challenge to parole denial where the reason

for the denial was the seriousness of the offense, the murder of a law enforcement officer).

Yeager points to the Board's additional citation of use of a weapon, use of excessive force or violence, and community opposition in the 2011 and 2016 denials, but that does not change the analysis. Such factors, as Yeager alleges in his complaint, are related to seriousness of the offense. Nothing in the law or regulations changed so as to create a sufficient risk of increasing the measure of punishment for Yeager's crimes. *See Cavallaro,* 908 S.W.2d at 134-37 (denial of parole release based on seriousness of the offense valid under old or new parole statute; therefore, statute does not increase punishment beyond that allowed by the old law, and thus, does not violate ex post facto); *Delay v. Missouri Probation,* 174 S.W.3d 662 (Mo. App. 2005) (no violation of ex post facto when reason for parole denial is valid under either the old or new statute). Furthermore, "parole decisions are inherently complex" and the Board holds almost unlimited discretion in the grant or denial of parole. *Smith v. Holden,* 2007 WL 2317415, at *7 (W.D. Mo. Aug. 9, 2007) (prisoner was not entitled to an "unchanging philosophy" by the Parole Board; rejecting ex post facto challenge).

Yeager also alleges that it "appears" the Board has denied him parole because of a statute that became effective after his offense, that requires the service of 85% of a sentence for dangerous felony offenses before parole eligibility, Mo. Rev. Stat. § 558.019.3, and he has already served more than the 15-year deterrent and retributive portion of his sentence as defined in the parole regulation existing at the time of his offense, 14 C.S.R. 80-2.010 (1992). Doc. 1 at 19–20, 22–23.

Yeager's allegation concerning the Board's application of the 85% rule is conclusory and speculative, and inconsistent with his allegation that he was convicted in 1993 and began receiving parole hearings 13 years later, in 2006.

Furthermore, service of the 15 years representing the deterrent and retributive portion of a sentence does not automatically entitle a prisoner to release. The 15-year period merely represents a minimum period that must be served before parole consideration. Missouri parole regulations are nonbinding aids to the Board, and in exercising its almost unlimited discretion, it is not bound to parole a prisoner once he serves 15 years, or at any particular time thereafter, even if, as Yeager alleges, the Board continues to rely on the "static factors" of his offense. *See Harger v. Mo. Bd. of Probation and Parole*; 2010 WL 2008866 (E.D. Mo. 2010) (rejecting argument that offender had served the 15 years defined by regulation as the deterrent and retributive portion of the sentence, because Missouri parole guidelines are merely aids to the Board in exercising its almost unlimited discretion and the Board is free to deviate from them; ex post facto challenge dismissed); *State ex rel. Shields v. Purkett*, 878 S.W.2d 42, 46–47 (Mo. 1994) (the Board's regulations concerning the "retributive and deterrent" portion of a sentence refer to the minimum time the Board considers appropriate before an offender will be eligible for parole; prisoner is not entitled to parole release after serving the Board's required minimum terms, nor does that service prohibit the Board from considering the seriousness of the underlying offense in subsequent parole decisions); *McKown v. Mitchell*, 869 S.W.2d 765, 769 (Mo. App. 1993) (regulation defining deterrent and retributive portion of sentence was meant to define a mandatory minimum that must be served in prison before parole consideration, not dictate release at that date); and *Watley v. Mo. Bd. of Probation and Parole*, 863 S.W.2d 337, 340 (Mo. App. 1992) (same).

Yeager argues that under the Board's 1992 regulations, the Board was not allowed to consider the seriousness of his underlying offense after he served 15 years' imprisonment, *i.e.,* the regulation establishes a "bright line rule that, after an individual has served 15 years of his

life sentence, the deterrent and retributive portion of that sentence has been satisfied." Doc. 17, p. 13 of 21. Yeager argues that *Shields, Watley,* and *McKown* can be distinguished as having been based on an older regulation that required prisoners to serve "approximately 25%" of a sentence before they would be eligible for parole, while the regulations affecting Yeager require him simply to serve "fifteen years." Doc. 17, p. 9. However, the cases were not decided based on the use of the word "approximately" in the old regulations. Rather, the courts in *Shields, McKown,* and *Watley* held that the Board may continue to consider all factors relevant to parole release after offenders serve the deterrent and retributive portions of their sentences, because those regulations establish only a minimum eligibility rather than a presumptive release. *Shields,* 878 S.W.2d at 46–47; *McKown*, 869 S.W.2d at 769; and *Watley,* 863 S.W.2d at 339-40.

The Missouri Supreme Court also expressly held in *Shields* "that the 25% language merely establishes a minimum not only for purposes of parole release in general, but also for considering the retributive and deterrent portion of the sentence to have been served." 878 S.W.2d at 47. The court explained that no parole regulations could prohibit the Board from considering any relevant factors, because to do so would contravene the Board's statutory limitation that parole shall be ordered only for the best interest of society, and that allowed the Board to release offenders only when doing so would not be "a detriment to the community or to the [offender]." *Id.* The parties cite no authority concerning this specific argument with respect to 14 C.S.R. 80-2.010 (1992), and the Court has located none. But in view of *Shields,* including the analysis of the statutory directives, the Court concludes that the Missouri Supreme Court would reach the same conclusion with respect to application of 14 C.S.R. 80-2.010. Therefore, Yeager's 15-year, bright-line argument is rejected.

Counts II and V fail as a matter of law.

### C. The cruel and unusual punishment claims, Counts III and VI, fail as a matter of law.

Yeager alleges in Counts III and VI that his parole denials amount to cruel and unusual punishment because of the broad nature of evidence from crime victims permitted at his parole hearings. Doc. 1 at 20–21, 23–24. The thrust of the argument is that there are limitations on victim impact evidence that may be presented at a criminal sentencing, and a parole hearing is like sentencing, so the protections against cruel and unusual punishments should be extended to his parole proceedings. *Id.* Yeager alleges that he is making a non-frivolous argument for extending, modifying, or reversing existing law, or establishing new law.

Missouri parole hearings are not sentencing hearings, *i.e.*, they do not affect the length of a sentence imposed, merely the conditions under which the sentence is served and the location where it is served. *State ex rel. Nixon v. Russell*, 129 S.W.3d 867, 870–71 (Mo. 2004). Yeager cites no authority, whether federal or Missouri, that extends the constitutional guaranties against cruel and unusual punishments afforded in the sentencing context to parole hearings, and the Court has located none. Therefore, Counts III and VI fail as a matter of law.

## III. Conclusion

Defendants' motion to dismiss, Doc. 14, is granted.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: September 20, 2017
Jefferson City, Missouri